UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STEVEN PALISTRANT,

                              Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

Case # 16-CV-588-FPG

DECISION AND ORDER

## INTRODUCTION

Plaintiff Steven Palistrant brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 18, 26. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

On September 27, 2010, Palistrant applied for DIB and protectively applied for SSI with the Social Security Administration ("SSA"). Tr.[1] 195-204. He alleged disability since March 31, 2004 due to back and neck conditions and headaches. Tr. 224. On August 24, 2012, Palistrant appeared and testified at a hearing before Administrative Law Judge Nancy Pasiecznik. Tr. 34-73. On July 28, 2014, Palistrant and a vocational expert ("VE") appeared and testified at another

---

[1] "Tr." refers to the administrative record in this matter.

1

hearing before Administrative Law Judge Donald T. McDougall ("the ALJ"). Tr. 74-115. On August 14, 2014, the ALJ issued a decision finding that Palistrant was not disabled within the meaning of the Act. Tr. 13-26. On May 24, 2016, the Appeals Council denied Palistrant's request for review. Tr. 4-10. Thereafter, Palistrant commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

2

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(4)(c). If the claimant does not have a severe impairment or combination of impairments that is severe, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. 20 C.F.R. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Palistrant's claim for benefits under the process described above. At step one, the ALJ found that Palistrant had not engaged in substantial gainful activity since the alleged onset date. Tr. 18. At step two, the ALJ found that Palistrant has the following severe impairments: status post motor vehicle injuries to the lower back and neck and carpal tunnel syndrome of the bilateral upper extremities. Tr. 19-20. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 20.

Next, the ALJ determined that Palistrant retains the RFC to perform light work[2] with additional limitations. Tr. 21-24. Specifically, the ALJ found that Palistrant must be able to alternate between sitting and standing every half hour for a few minutes; can only occasionally stoop; cannot bend, crouch, kneel, or balance, climb ladders, ropes, or scaffolds, or work at heights or around dangerous machinery. Tr. 21.

At step four, the ALJ noted that Palistrant has no past relevant work. Tr. 24. At step five, the ALJ relied on the VE's testimony and found that Palistrant can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 24-25. Specifically, the VE testified that Palistrant could work as an office helper and production assembler. Tr. 25. Accordingly, the ALJ concluded that Palistrant was not disabled under the Act. Tr. 25-26.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

## II. Analysis

Palistrant argues that remand is required because (1) the ALJ violated the treating physician rule when he evaluated Dr. Joshua Usen's opinion; (2) the sit/stand option in the RFC determination is not supported by substantial evidence; and (3) the ALJ relied on "stale" opinions from two consultative examiners.[3] ECF No. 18-1 at 17-29. The Court addresses each argument below.

### A. The ALJ did not violate the treating physician rule.

Palistrant first argues that the ALJ violated the treating physician rule by failing to provide good reasons for assigning only little weight to Dr. Usen's opinion. ECF No. 18-1 at 17-24. The Court disagrees.

The treating physician rule instructs the ALJ to give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but he must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

---

[3] Palistrant argues for the first time in his reply brief that the ALJ failed to develop the record. ECF No. 27 at 6-8. Specifically, Palistrant asserts that the ALJ should have directed him to obtain a more detailed statement from Dr. Usen. *Id.* In this Circuit, however, arguments raised for the first time in reply papers "need not be considered." *Mayer v. Neurological Surgery, P.C.*, No. 15-CV-0864(DRH)(ARL), 2016 WL 347329, at *4 (E.D.N.Y. Jan. 28, 2016) (citing *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 625 n.1 (2d Cir. 2007)) (citation omitted).

When a treating physician's opinion is not given controlling weight, the ALJ must consider the following factors in determining how much weight it should receive: "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

In August 2012, Dr. Usen completed a Department of Social Services Medical Report for Determination of Disability form. Tr. 617-18. He opined that Palistrant could not perform work at any exertion level due to "severe deficits." Tr. 617. Dr. Usen indicated that Palistrant has back pain and tightness, neck issues, "debilitating" headaches, and that he cannot "walk or stand for prolonged periods." *Id.*

In May 2013, Dr. Usen completed a New York State Office of Temporary and Disability Assistance form wherein he opined that Palistrant is moderately limited in his ability to walk, sit, lift, carry, push, pull, bend, and use his hands, and is very limited in his ability to stand and climb. Tr. 628-29. Dr. Usen also found Palistrant very limited in his ability to function in a work setting at a consistent pace, but he otherwise indicated that Palistrant has unlimited mental functioning. Tr. 629. Dr. Usen opined that Palistrant "cannot work at all now." *Id.*

The ALJ's decision summarized Dr. Usen's treatment notes and opinions. Tr. 22-23. The ALJ afforded "very little weight" to Dr. Usen's assessments because he found them unsupported by objective evidence, including his contemporaneous treatment notes and Palistrant's treatment

6

history, and because they opined on the ultimate issue of disability, which is reserved to the Commissioner. Tr. 23.

### 1. Lack of Supporting Evidence

The SSA's regulations authorize the ALJ to reduce the weight he affords a treating physician's opinion if it is unsupported by relevant evidence, like medical signs and laboratory findings. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). In accordance with those regulations, the ALJ discounted Dr. Usen's opinion because it was unsupported by objective evidence or contemporaneous treatment notes. Tr. 23. Specifically, the ALJ noted that Dr. Usen's reports indicate that Palistrant "remained neurologically intact with no loss in muscle strength, tone, or function in any area." *Id.* (citing Tr. 617-51); *see also* Tr. 22 (citing Tr. 585, 587, 589, 602, 607, 612, 615) (portion of the ALJ's decision indicating that Dr. Usen found Palistrant to have "no more than moderate functional loss" and that he "remained physically intact").

Review of the relevant treatment notes supports the ALJ's conclusion. Dr. Usen's August 2012 opinion indicates that he examined Palistrant on July 10, 2012. Tr. 617-18. Dr. Usen opined that Palistrant was completely disabled due to back and neck pain and "debilitating headaches," however, his July 10, 2012 treatment notes lack objective evidence in support of this extreme finding. Although Palistrant had back pain and decreased range of motion, tenderness, and pain in his neck, he looked "more comfortable," moved "a little better," had a normal gait, and had no neurological deficits. Tr. 614-15. Treatment notes from appointments before July 10, 2012, contain similar findings. *See, e.g.*, Tr. 583-84, 596-98, 601-04, 608-09, 611-12.

Dr. Usen's May 2013 opinion indicates that he examined Palistrant on May 10, 2013. Tr. 629-28. Dr. Usen opined that Palistrant cannot work and has several physical limitations,[4] but his

---

[4] The opinion form that Dr. Usen used contains a space where he could have described Palistrant's treatment history in support of the opinion, but Dr. Usen left this section blank. Tr. 629.

7

May 10, 2013 treatment notes contain mild findings. Although Palistrant had back and neck pain, he did not have trouble walking, had a normal gait and posture, and normal cervical, thoracic, and lumbosacral spine movements. Tr. 623-27. Dr. Usen also opined that Palistrant was very limited in his ability to function in a work setting at a consistent pace, but the May 10 examination reveals that Palistrant was alert and oriented, had normal affect, speech, thought content, perception, and cognitive function, and felt his depression was controlled. Tr. 624, 626.

The above medical evidence supports the ALJ's conclusion that Dr. Usen's opinion lacked objective support and, therefore, the Court finds that the ALJ did not err when he discounted Dr. Usen's opinion on this basis.

### 2. Issue Reserved to the Commissioner

The ALJ also discounted Dr. Usen's opinion that Palistrant cannot work because it is the Commissioner's responsibility to make the final disability determination. Tr. 23.

A medical source's statement that a claimant is "disabled" or "unable to work" does not mean that the Commissioner will find that claimant disabled, because the Commissioner must determine whether a claimant meets the statutory definition of disability. *Cottrell v. Colvin*, 206 F. Supp. 3d 804, 809-10 (W.D.N.Y. 2016) (citing 20 C.F.R. § 404.1527(d)(1)); *see also* 20 C.F.R. § 416.927(d)(1). An opinion that the claimant is disabled, however, "must never be ignored." S.S.R. 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996).[5] Instead, the ALJ "must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *Id*; *see also* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (the ALJ will give more weight to an opinion that is consistent with the record as a whole).

---

[5] The SSA rescinded S.S.R. 96-5p, however, the rescission only affects claims filed on or after March 27, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, & 06-3p, 2017 WL 3928305, at *1 (S.S.A. Mar. 27, 2017). Therefore, S.S.R. 96-5p is still relevant for the purposes of Palistrant's claim, which he filed on September 27, 2010.

8

Here, the ALJ did not ignore Dr. Usen's opinion that Palistrant was disabled; instead, he specifically noted that it was an issue reserved to the Commissioner after he found the opinion unsupported by objective evidence, as discussed above. Accordingly, the ALJ did not err when he discounted Dr. Usen's opinion on this basis.

For all the reasons stated, the Court finds that the ALJ complied with the treating physician rule and provided good reasons for affording little weight to Dr. Usen's opinion.

### B. The sit/stand limitation in the RFC assessment is supported by substantial evidence.

Palistrant also argues that the finding that he must be able to alternate between sitting and standing every half hour for a few minutes is "highly specific" and thus unsupported by substantial evidence. ECF No. 18-1 at 24-26. The Court disagrees.

A claimant's RFC reflects what he or she "can still do despite his or her limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). The ALJ assesses RFC "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The RFC assessment does not have to "perfectly correspond" with any of the medical source opinions cited in the ALJ's decision; rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order). The Court upholds an RFC finding "when there is substantial evidence in the record to support each requirement listed in the regulations." *Desmond*, 2012 WL 6648625, at *5 (citation omitted).

Palistrant argues that the sit/stand option lacks evidentiary support. Palistrant testified, however, that he can sit and stand for 20-30 minutes each before his back starts to feel "aggravated" and that he left a prior job because he "couldn't sit all day long." Tr. 80, 87, 92, 95. Palistrant

9

alternated between sitting and standing during the hearing (Tr. 72, 95), and some treatment notes indicate that he alternated between sitting and standing after "a few minutes" during examinations (*see, e.g.*, Tr. 586, 589). Moreover, while consultative examiner Dr. Donna Miller did not discuss Palistrant's ability to sit or stand (Tr. 543), Dr. Usen opined that Palistrant had sitting and standing limitations (Tr. 629).

It is "the ALJ's duty to formulate the RFC after evaluating the opinion evidence, treatment records, and the testimony of the claimant." *Davis v. Colvin*, No. 15-CV-6695P, 2017 WL 745866, at *11 (W.D.N.Y. Feb. 27, 2017) (finding that the ALJ did not err by assessing a one-hour standing limitation even though it did not precisely correspond to any medical opinion because the plaintiff's daily activities, treatment history, and a consultative examiner's evaluation supported that limitation). Thus, based on the evidence discussed above, the Court finds that the ALJ did not err when he determined that Palistrant must be able to alternate between sitting and standing every half hour for a few minutes and that this finding is supported by substantial evidence.

### C. The consultative examiners' opinions were not stale.

Finally, Palistrant argues that the opinions of consultative examiners Drs. Donna Miller and Sandra Jensen were stale and that the ALJ erred when he relied on them. ECF No. 18-1 at 26-29. The Court disagrees.

"[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ['s] finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015) (quotation marks and citation omitted), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (summary order). A medical opinion may be stale if it does not account for the claimant's deteriorating condition. *See, e.g.*, *Jones v. Comm'r of Soc. Sec.*, No. 10 CV 5831(RJD), 2012 WL 3637450, at *2 (E.D.N.Y. Aug. 22, 2012) (ALJ should not have relied on a medical

opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition"); *Girolamo v. Colvin*, No. 13-CV-06309 (MAT), 2014 WL 2207993, at *7-8 (W.D.N.Y. May 28, 2014) (ALJ should not have afforded great weight to medical opinions rendered before plaintiff's second surgery).

On March 9, 2011, Dr. Miller examined Palistrant and rendered an opinion as to his physical ability to work. Tr. 541-44. The ALJ gave Dr. Miller's opinion "great weight" because he found it consistent with Palistrant's objective testing.[6] Tr. 23. Dr. Jensen also examined Palistrant on March 9, 2011 and rendered an opinion as to his mental ability to work. Tr. 536-40. The ALJ gave this opinion "substantial weight" because Palistrant's "providers have noted little in the way of mental limitations."[7] Tr. 23.

The ALJ issued his decision on August 14, 2014, nearly three and a half years after the consultative examinations. Tr. 16-26. Palistrant argues that Drs. Miller and Jensen's opinions were stale because he engaged in "significant treatment" between the examinations and the ALJ's decision. ECF No. 18-1 at 27. Just because the claimant continues treatment after an opinion is rendered, however, does not mean that the opinion is stale. Although Palistrant also argues that he experienced a "serious deterioration" of his back and neck issues after the opinions were rendered (ECF No. 18-1 at 28), the record does not support this assertion.

A treatment note from May 27, 2011 indicates that Palistrant complained of a "slow build of neck and back pain," but another note from a few months later indicates that Palistrant specifically denied any change in his pain. Tr. 591, 605. Other treatment notes from April 29,

---

[6] *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (the ALJ is entitled to give more weight to a medical opinion that is supported by relevant evidence, like medical signs and laboratory findings).

[7] *See id.* at §§ 404.1527(c)(4), 416.927(c)(4) (the ALJ is entitled to give more weight to a medical opinion that is consistent with the record as a whole).

11

May 13, and October 26, 2011, November 13, 2012, and May 10 and 31, 2013, reveal that Palistrant complained of back and neck pain and had tenderness and restricted ranges of motion, but there is no evidence that these issues were getting worse or "seriously deteriorating" as Palistrant claims. Tr. 579-81, 585-90, 621-27, 630-32.

Similarly, treatment notes from July 6, August 8, September 6, and November 28, 2011, and June 7 and July 10, 2012, reveal that Palistrant had back and neck pain, however, they indicate that he looked "more comfortable" and moved "a little better." Tr. 596-98, 601-04, 608-09, 611-12, 614-15. Treatment notes from November 25, 2013 and July 2, 2014, indicate that Palistrant was not in acute distress and was "much better." Tr. 636, 645.

A November 22, 2011 cervical spine MRI revealed mild degenerative disc changes at C5-6 and C6-7, mild canal and bilateral foraminal stenosis, and no significant spinal canal stenosis, cord compression, or compression of exiting nerve roots. Tr. 582. This MRI does not appear to demonstrate significant deterioration from prior cervical spine MRIs. *See* Tr. 392, 395-96, 489-90.

For these reasons, the Court finds that Drs. Miller and Jensen's opinions were not stale and that the ALJ did not err when he relied on those opinions. *See Barber v. Comm'r of Soc. Sec.*, No. 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *7 (N.D.N.Y. July 22, 2016) (citations omitted) ("It is well established that an ALJ may rely on the medical opinions provided by State agency consultants and that those opinion[s] may constitute substantial evidence.").

## CONCLUSION

For the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 26) is GRANTED and Plaintiff's Motion for Judgement on the Pleadings (ECF No. 18) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgement and close this case.

IT IS SO ORDERED.

Dated: September 27, 2018
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court